UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TOMMY O. HARDIN, | ) | |
| | ) | |
| Plaintiff, | ) | 11-cv-3238 |
| | ) | |
| v. | ) | |
| | ) | |
| ARAMARK FOOD SERVICES CORP., STEVE DREDGE, and GREG SCOTT, | ) ) ) ) | |
| Defendants. | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE.**

Plaintiff proceeds pro se from his detention in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act. He pursues a constitutional claim that the facility provided him inedible food by serving mechanically separated chicken, both the kind which arrived in boxes marked "for further processing only" and the kind which arrived in boxes not so marked. Plaintiff also alleges that he was, in effect, denied a diabetic diet because he could not eat the mechanically separated chicken which was served to him twice daily at times. Lastly,

Plaintiff alleges that the trays and utensils are dirty and the food served cold.

Before the Court are Defendants' motions for summary judgment. For the reasons explained below, the motion by Defendants Aramark Correctional Services LLC ("Aramark") and Dredge is denied. The motion by Defendant Scott is granted on the grounds of qualified immunity.

**Background**

On December 20, 2010, four residents detained in the Rushville Treatment and Detention Center filed a purported class action challenging, as is relevant to this case, the serving of mechanically separated chicken from boxes marked "for further processing only." Smego v. Ill. Dept. of Human Serv., 10cv3334 (C.D. Ill.). On June 2, 2011, the plaintiffs' motion for class certification in that case was denied because they were pro se. (10cv3334, d/e 43, p. 2.) A flood ensued of over 60 additional cases filed by some 80 other residents regarding the same issues.

The additional plaintiffs were joined into the original case, and Plaintiff Richard Smego was designated as spokesperson. Id. d/e 336. The Court was eventually able to recruit pro bono counsel,

but only for the plaintiffs in the original case. The claims of the rest of the plaintiffs were severed and stayed, with the hopes that the resolution of the original case might resolve the other cases or help guide the Court in resolving the other cases.

Summary judgment was denied in the original case, and then the original case settled in July 2014. Part of the settlement was an agreement that the mechanically separated chicken labeled "for further processing only" would no longer be served at the facility. However, Plaintiff maintains that mechanically separated chicken not so labeled continued to be served until an unidentified later date.

After the original case settled, the plaintiff was given an opportunity to file an amended complaint if he still wished to proceed with his claims. Six of those cases remain, including this one, which is now at the summary judgment stage.

**Legal Standard Applicable to Civil Detainee's Claim**

The Fourteenth Amendment due process clause governs rather than the Eighth Amendment because Plaintiff is a civil detainee, not a prisoner serving a sentence. The Supreme Court stated in <u>Youngberg v. Romeo</u> that "[p]ersons who have been involuntarily

committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." 457 U.S. 307, 322 (1982). This difference was reiterated by the Seventh Circuit in <u>Hughes v. Scott</u>, 816 F.3d 955, 956 (7th Cir. 2016); s*ee also* <u>McGee v. Adams</u>, 721 F.3d 474, 480 (7th Cir. 2013)(citing <u>Youngberg</u> but noting that "the Supreme Court has not determined how much additional protection civil detainees are entitled to beyond the protections afforded by the Eighth Amendment bar on cruel and unusual punishment."); <u>Rice ex rel. Rice v. Correctional Medical Services</u>, 675 F.3d 650, 664 (7th Cir. 2012)( "[T]he Supreme Court has not yet determined just how much additional protection the Fourteenth Amendment gives to pretrial detainees.").

In application, the Fourteenth Amendment standard thus far appears indistinguishable from the Eighth Amendment standard on conditions of confinement claims. For example, the Seventh Circuit has stated that a conditions of confinement claim by a civil detainee requires an objectively serious deprivation and deliberate indifference by the defendant. <u>Sain v. Wood</u>, 512 F.3d 886, 894 (7th Cir. 2008). This is the same standard governing an Eighth

Amendment conditions of confinement claim by a prisoner. The Seventh Circuit more recently confirmed in Smith v. Dart, 803 F.3d 304, 310 (7th Cir. 2015), that "[w]e have held that there is little practical difference, if any, between the standards applicable to pretrial detainees and convicted inmates when it comes to conditions of confinement claims, and that such claims brought under the Fourteenth Amendment are appropriately analyzed under the Eighth Amendment test."

However, the Seventh Circuit has also recently acknowledged the difficulty of defining the legal standard applicable to detainees, noting the "shifting sands of present day case authority." Werner v. Wall, 836 F.3d 751, 759 (7th Cir. 2016). In Smith v. Dart, even though confirming the appropriateness of relying on Eighth Amendment cases, the Seventh Circuit stated in dicta that the subjective element requires a "'purposeful, a knowing, or a possibly reckless state of mind,'" arguably a lower hurdle than deliberate indifference. 803 F.3d 304 n. 2 (quoted cite omitted). That dicta was ultimately referring to the Supreme Court case of Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015), which held that a defendant's subjective state of mind in a pretrial detainee's

excessive force claim was relevant only to the extent that the defendant's actions were "purposeful or knowing." After Kingsley, though, the Seventh Circuit has continued to rely on the deliberate indifference standard to pretrial detainees' claims for lack of medical care. *See, e.g.,* Daniel v. Cook County, 833 F.3d 728, 732-33 (2016).

At this point, the Court can avoid trying to define what greater protection is afforded civil detainees as compared to prisoners. Plaintiff's claims survive summary judgment even under the Eighth Amendment standard. Avoidance may no longer be possible when faced with how the jury should be instructed, but that is a discussion for another day.

**Discussion**

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

"The Constitution mandates that prison officials provide inmates with 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.'" Smith v. Dart, 803 F.3d 304, 312 (7th Cir. 2015)(*quoting* French v. Owens, 777 F.2d 1250, 1255 (7th Cir.1985)(citation omitted).

**Defendants Aramark and Dredge**

Viewing the evidence in the light most favorable to Plaintiff means accepting his version of events, if his version is based on personal knowledge.

Plaintiff is an insulin dependent diabetic. As part of his diabetic diet, he was served mechanically separated chicken often twice a day, particularly, mechanically separated chicken patties. Plaintiff testified in his deposition that he became ill every time he ate the mechanically separated chicken, regardless of how the chicken was labeled. (Pl.'s Dep. p. 71, 75). According to Plaintiff, the mechanically separated chicken smelled like sewage, and Plaintiff suffered stomach cramps, profuse vomiting, and diarrhea hours after eating the product. (Pl.'s Dep. p. 56, 76, 77, 80.) Once he stopped eating the product, he no longer suffered those

problems. (Pl.'s Dep. p. 87-88.) Plaintiff asserts that he talked to Dredge about the mechanically separated chicken and about how his meals were not in compliance with diabetic guidelines, but Dredge told Plaintiff to "get the fuck out of my kitchen." (Pl.'s Dep. pp. 26-27, 87.) Plaintiff told Dredge that the mechanically separated chicken was making him sick, but Dredge responded that he "didn't give a fuck, that he was going to continue serving that to me." (Pl.'s Dep. p. 29.) Dredge also told Plaintiff that "he doesn't do diabetic diets." (Pl.'s Dep. p. 30.) As a result of Dredge's refusal to modify Plaintiff's meal tray, Plaintiff took himself off the diabetic diet. According to Plaintiff, the regular diet served less mechanically separated chicken but contained more of the carbohydrates which are contraindicated for his diabetes. (Pl.'s Dep. 55, 56, 60.) The regular diet still served mechanically separated chicken about 16 times in 28 days, which would average to about four times per week.[1] (Pl.'s Dep. 68.)

Plaintiff wants to remove mechanically separated chicken from all meals. He also seeks a diabetic diet approved by the American Diabetes Association.

---

[1] Other Plaintiffs put the number at six times a week, but the difference is not material.

Defendants Aramark and Dredge argue that the federal regulations governing mechanically separated chicken do not prohibit the serving of meals containing mechanically separated chicken. They are correct. (Arrasmith Aff. para. 11)("Approximately 1.5 billion pounds of mechanically separated chicken is produced per year for human consumption.") Defendant Dredge, Aramark's Food Services Director at Rushville, and Defendant Scott, the Director of the facility, aver that they ate meals at Rushville containing the chicken marked "for further processing only" without problem. (Dredge Aff. para. 22; Scott Aff. para. 11.)

However, federal regulations require that mechanically separated chicken used in food products does not exceed certain bone particle size and calcium content limits. 29 C.F.R. § 381.173(b)-(c). Mechanically separated chicken that exceeds those limits must be labeled as "mechanically separated chicken for further processing" and "used only in producing poultry extractives, including fats, stocks, and broths." 29 C.F.R. § 381.173(e).

As discussed in the Court's order on summary judgment in the original case, the label "further processing only" on the boxes containing the mechanically separated chicken, coupled with 29

C.F.R. §381.173(e), together create an inference in Plaintiff's favor that the chicken so marked should have been used only for soup stock and like products.

Additionally, the labeling is beside the point in this case because Plaintiff maintains that even the mechanically separated chicken not marked "further processing only" made him vomit profusely or have diarrhea every time he ate the product. Drawing inferences in Plaintiff's favor, Plaintiff could not eat the mechanically separated chicken even if others could.

The Director of Nutrition & Operational Support Services for Aramark (West Region), Cynthia Irizarry, avers that the meal plan at Rushville is designed to exceed the minimum caloric and nutritional requirements to ensure that residents' nutritional and caloric needs are met, even if the residents choose not to eat part of a meal. (Irizarry Aff. 16.) She avers that residents who "refused to consume dishes containing MSC [] would still receive an average of between 2586 and 2596 calories and 83.7 grams of protein per day." (Irizarry Aff. 18.) Even so, a reasonable jury could still find that regularly providing food that made Plaintiff physically ill—vomiting and diarrhea— was an objectively serious deprivation. *See, e.g.,*

Prude v. Clark, 675 F.3d 732, 735 (7th Cir. 2012)("sickening food" (nutriloaf) which caused "substantial weight loss, vomiting, stomach pains, and maybe an anal fissure . . . would violate the Eighth Amendment.)  Additionally, she does not address whether the meals would be appropriate for a diabetic, with or without eating the mechanically separated chicken.

Defendant argues that Plaintiff needs a medical expert to prove that his symptoms were caused by the mechanically separated chicken.  The Court disagrees.  Whether food makes a person sick is within a layperson's experience.  Experiencing diarrhea or vomiting every time one eats a certain food is a good clue.  Plaintiff's testimony that he experienced the symptoms when he ate the product and no longer experienced the symptoms when he stopped eating the product is enough to allow an inference of causation.

Thus, a jury could rationally find that Plaintiff suffered an objectively serious deprivation.  A jury could also rationally find that Defendants Aramark and Dredge were deliberately indifferent to that deprivation.  These Defendants had notice of the problem once served with the original lawsuit in early 2011, and probably before then through the grievances and complaints they received.

Plaintiff personally told Defendant Dredge that Plaintiff was unable to eat the mechanically separated chicken and that the meals were not in compliance with a diabetic diet.

Defendant Dredge argues that he cannot be held liable because of his supervisory position. But Dredge is not being sued because he is a supervisor. He is being sued because, looking at the record in the light most favorable to Plaintiff, Defendant Dredge directly participated in the violation Plaintiffs' constitutional rights by failing to take reasonable action despite knowing that the mechanically separated chicken was making Plaintiff ill. Inferences arise in Dredge's favor, too, but this is the summary judgment stage.

Aramark argues that Plaintiffs have not proven that a policy attributable to Aramark caused Plaintiffs' deprivation. However, Aramark was responsible for providing the meals, including choosing and ordering the ingredients to make those meals. Aramark officials approved the use of the mechanically separated chicken and continued that approval after a significant number of residents complained the product made them sick. That is the policy and practice at issue which is attributable to Aramark.

Defendants Aramark and Dredge reassert their argument that they are not state actors.  The Court remains of the opinion that they are state actors because they have assumed an essential state function.  Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 827 (7th Cir. 2009); Jubeh v. Dart, 2011 WL 6010267 *2(not published in federal reporter)(N.D. Ill. 2011)(rejecting Aramark's state actor argument and collecting cases).

The Court does agree with Defendants Aramark and Dredge that injunctive relief is no longer available since Plaintiff agrees that the mechanically separated chicken, however labeled, is no longer served.  (Pl.'s Dep. 115-16.)

Defendants Aramark and Dredge also argue that Plaintiff's claims about a lack of an adequate diabetic diet are time-barred.  Plaintiff does not dispute that he removed himself from the diabetic diet in April 2011.  He did not make his allegations about Dredge's refusal to revise the diabetic diet until he filed his amended complaint in 2014.  However, the Court had stayed this case from January 2012 until August 2014, so Plaintiff cannot be faulted for not filing an amended complaint before then.  Additionally, Plaintiff's original complaint filed in 2011 mentioned that he was

diabetic, and Dredge's alleged refusal to revise the diabetic diet to exclude mechanically separated chicken arguably continued until mechanically separated chicken was no longer served at some undetermined date. Plaintiff still seeks a diabetic diet, which suggests that the refusal to revise the diabetic diet is ongoing. On this record, Defendants Dredge and Aramark have not met their burden of showing this claim is barred by the statute of limitations.

### Defendant Scott

Plaintiff holds Defendant Scott, the Director of the Rushville Treatment and Detention Center, responsible for the serving of the mechanically separated chicken. (Pl.'s Dep. 144-45.) Drawing an inference of deliberate indifference against Defendant Scott is difficult. Plaintiff does not dispute that Jennifer Blaesing, then the Rehabilitation Director, listened to the residents' complaints, did her own research on mechanically separated chicken, and relied on Defendant Dredge's representation that the product met the requirements of the contract between Aramark and the facility. (Blaesing Aff. paras. 7-8.) Defendant Scott, in turn, would have been justified in relying on Defendant Blaesing's conclusions from Blaesing's inquiry into the matter. Burks v. Raemisch, 555 F.3d

592 (7th Cir. 2009)("The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks . . .") Plaintiff does not appear to hold Defendant Scott responsible on the diabetic diet claims, but, in any event, no evidence suggests that Defendant Scott knew that Plaintiff's diabetic diet was inadequate, that the regular meals were not advised for Plaintiff's diabetes, or that Plaintiff felt forced to eat the regular meals to avoid the mechanically separated chicken patties on the diabetic trays.

The Court need not decide whether a reasonable inference of deliberate indifference, or some other sufficiently culpable state of mind, arises against Defendant Scott. Defendant Scott is entitled to qualified immunity even if he did violate Plaintiff's rights.[2] Pearson v. Callahan, 555 U.S. 223, 236 (2009)(courts may skip the question of whether a right was violated and answer only whether the right was clearly established).

The Supreme Court has recently reiterated the importance of qualified immunity. White v. Pauly, 137 S.Ct. 548 (7th Cir. 2017).

---

[2] Defendants Aramark and Dredge do not assert qualified immunity. *See* Zaya v. Sood, 836 F.3d 800 (7th Cir. 2016)("The Supreme Court has held that employees of privately operated prisons may not assert a qualified-immunity defense. *See Richardson v. McKnight*, 521 U.S. 399, 412, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997). We have construed that holding to extend to employees of private corporations that contract with the state to provide medical care for prison inmates. *See Currie v. Chhabra*, 728 F.3d 626, 631–32 (7th Cir. 2013); *see also Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 794 n.3 (7th Cir. 2014).").

Qualified immunity protects a government actor from liability unless the government actor violates a "clearly established statutory or constitutional right[] of which a reasonable person would have known." White v. Pauly, 137 S.Ct. 548, 550 (2017)(*quoting* Mullenix v. Luna, 136 S.Ct 305, 308 (2015)(internal quotations omitted). A right is clearly established if the right is "beyond debate" under existing precedent at the time the violation occurred. Id. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Id.

A recitation of cases establishing the obvious rule that detainees are entitled to nutritionally adequate food is not enough to defeat qualified immunity. A case must be factually similar enough to this case to render Defendants' actions unconstitutional beyond debate.

The Court has not been able to find any case sufficiently similar to this case, whether under the Eighth or Fourteenth Amendment. The cases the Court did find in which possible constitutional violations were identified involved a more objectively serious risk to health and also a more systemic deprivation than the circumstances in this case.

For example, the prisoner in Prude v. Clark, 675 F.3d 732, 735 (7th Cir. 2012) was fed a "sickening food" called nutriloaf for all his meals during his temporary stays in jail for 7-10 days each. After two days during one of the stays, he began vomiting and stopped eating the nutriloaf, living instead on bread and water and ultimately losing 8.3% of his body weight. Here, in contrast, Plaintiff offers no evidence that he lost weight or suffered nutritional deficiencies. *Compare with* Smith v. Dart, 803 F.3d 304, 312 (7th Cir. 2015)(detainee's allegation that food was "'well below nutritional value'" stated claim). Plaintiff does not dispute that, from a nutritional standpoint, he was provided enough protein from the regular meals even without eating the mechanically separated chicken. Plaintiff's diabetes complicates the issue, but there is no evidence that Defendant Scott knew that Plaintiff was being denied an adequate diabetic diet or that the mechanically separated chicken played a role in Plaintiff's alleged lack of an adequate diabetic diet.

In short, the Court has not found a case which establishes a clear right to not be served a sickening entree four to six times per

week, so long as no known nutritional inadequacies, loss of weight, or danger to health results from avoiding the sickening food.

## Conclusion

The Court must draw reasonable inferences in Plaintiffs' favor at this stage and may not weigh the strength of competing inferences. Stokes v. Board of Educ. of the City of Chicago, 599 F.3d 617 (7th Cir. 2010)("In deciding a motion for summary judgment, neither the district court nor this court may assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.") Plaintiffs' testimony allows a reasonable inference that he suffered an objectively serious deprivation. Defendant Aramark's responsibility to provide food service, Defendant Dredge's position as Food Service Director, the original lawsuit filed in 2010, Plaintiffs' joinder in that original lawsuit, the refusal by Aramark and Dredge to stop serving the mechanically separated chicken labeled "for further processing only" for years, and Dredge's refusal to revise Plaintiff's diabetic diet allow a reasonable inference of deliberate indifference against Defendants Aramark and Dredge. Defendant Scott is entitled to qualified immunity. A trial will be

scheduled, if necessary, after the Magistrate Judge holds a settlement conference.

**IT IS ORDERED:**

(1) The motion for summary judgment by Defendants Aramark and Dredge is denied (73).

(2) The motion for summary judgment by Defendant Scott is granted on the grounds of qualified immunity (81).

(3) This case is referred to the Magistrate Judge for a settlement conference.

(4) The clerk is directed to terminate Defendant Scott.

(5) The clerk is directed to notify the Magistrate Judge of the referral.

ENTER:   May 1, 2017

FOR THE COURT:

<u>   s/Sue E. Myerscough   </u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE